Hearing Date: June 28, 2023, at 10:00 a.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| Debtors. | ) (Jointly Administered) |
| GEORGES GEORGIOU, PHILIP HARRIS STEWART, and GILBERT CASTILLO, | ) |
| Plaintiffs, | ) Adversary Proceeding No. 23-01016 (MG) |
| v. | ) |
| CELSIUS NETWORK LLC, *et al.*; | ) |
| Defendants. | ) |

**NOTICE OF HEARING ON DEBTORS' MOTION TO DISMISS**
**THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion to Dismiss the Complaint and Incorporated Memorandum of Law* (the "Motion") will be held on **June 28, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Electronic appearances (eCourtAppearances) need to be made by 4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on **June 27, 2023**).

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on June 28, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on June 28, 2023.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; and (c) be filed electronically with the Court on the docket of *Georgiou, et al. v. Celsius Network LLC, et al.*, No. 23-01016 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov/).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the *Joint Stipulation and Agreed Order By and Among the Debtors and Plaintiffs* [Adv. Pro. No. 23-01016, Dkt. No. 6], as entered by the Court on May 3, 2023, the Plaintiffs' deadline to object to the Motion (the "Objection Deadline") is June 14, 2023.  The Debtors' deadline to reply to any objection (the "Reply Deadline") is June 21, 2023.

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely response may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov/ in accordance with the procedures and fees set forth therein.

Washington, D.C.
Dated: May 17, 2023

*/s/ T.J. McCarrick*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:     (202) 389-5000
Facsimile:     (202) 389-5200
Email:         judson.brown@kirkland.com
               tj.mccarrick@kirkland.com
               leah.hamlin@kirkland.com

- and -

Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com
               dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Hearing Date: June 28, 2023, at 10:00 a.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| GEORGES GEORGIOU, PHILIP HARRIS STEWART, and GILBERT CASTILLO, | |
| Plaintiffs, | Adversary Proceeding No. 23-01016 (MG) |
| v. | |
| CELSIUS NETWORK LLC, *et al.*; | |
| Defendants. | |

## DEBTORS' MOTION TO DISMISS THE COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATEMENT OF CONSENT ..............................................................................2

FACTUAL BACKGROUND..................................................................................2

I.     Celsius' Bankruptcy Cases. ........................................................................2

II.    The Earn Motion and Order..........................................................................3

III.   Plaintiffs' Adversary Case. ..........................................................................6

LEGAL STANDARD ............................................................................................8

ARGUMENT ..........................................................................................................9

I.     Plaintiffs' Claims Should Be Dismissed Pursuant to the Earn Order and the Law
       of the Case. ....................................................................................................9

II.    The Contractual Relationship Between Celsius and the Plaintiffs Precludes
       Several of Plaintiffs' Claims......................................................................12

       A.    Unjust Enrichment ..............................................................................13

       B.    Conversion ..........................................................................................14

       C.    Constructive Trust ..............................................................................15

III.   Plaintiffs Fail To State a Claim for Fraud ....................................................16

CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 477 W. 142nd St. Hous., Dev. Fund Corp.*,
No. 19-01126, 2020 WL 3067733 (Bankr. S.D.N.Y. June 8, 2020) ......................................10

*Am. Med. Ass'n v. United Healthcare Corp.*,
No. 00 Civ. 2800, 2007 WL 683974 (S.D.N.Y. Mar. 5, 2007) .............................................13

*In re AMR Corp.*,
567 B.R. 247 (Bankr. S.D.N.Y. 2017) ..............................................................................10, 12

*Aramony v. United Way of Am.*,
254 F.3d 403 (2d Cir. 2001)....................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................................8

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
949 F. Supp. 2d 486 (S.D.N.Y. 2013) ...............................................................................13, 15

*Clark-Fitzpatrick, Inc. v. Long Island R.R.*,
70 N.Y.2d 382 (1987) ..............................................................................................................13

*Equinox Gallery Ltd. v. Dorfman*,
306 F. Supp. 3d 560 (S.D.N.Y. 2018) ......................................................................................8

*In re First Cent. Fin. Corp.*,
377 F.3d 209 (2d Cir. 2004).....................................................................................................15

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016).......................................................................................................8

*Hoo-Chong v. Citimortgage, Inc.*,
2016 WL 868814 (E.D.N.Y. Mar. 7, 2016) ..............................................................................8

*Ideal Steel Supply Corp. v. Anza*,
882 N.Y.S.2d 190 (N.Y. App. Div. 2009) ..............................................................................17

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) ..............................................................................................................16

*Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*,
    52 F. Supp. 3d 601 (S.D.N.Y. 2014) ..................................................................14

*In re Motors Liquidation Co.*,
    585 B.R. 708 (Bankr. S.D.N.Y. 2018) (Glenn, J.) ..............................................10

*In re PCH Assocs.*,
    949 F.2d 585 (2d Cir. 1991) ............................................................................9, 10

*Pescatore v. Pan Am. World Airways, Inc.*,
    97 F.3d 1 (2d Cir. 1996) ........................................................................................9

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
    449 F. App'x 57 (2d Cir. 2011) ...........................................................................14

*Sec. Inv. Prot. Corp. v. BDO Seidman, L.L.P.*,
    95 N.Y.2d 702 (2001) ..........................................................................................16

*Simonds v. Simonds*,
    45 N.Y.2d 233 (1978) ..........................................................................................15

*United States v. Carr*,
    557 F.3d 93 (2d Cir. 2009) ....................................................................................9

**Statutes**

11 U.S. Code § 1107(a) .............................................................................................3

11 U.S. Code § 1108 ..................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6) .........................................................................................1, 8

Fed. R. Bankr. P. 7012 ...........................................................................................1, 8

Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this Adversary Proceeding through Federal Rule of Bankruptcy Procedure 7012, Debtor Celsius Network LLC and its debtor affiliates (together, the "Debtors," "Celsius," the "Company," or "Defendants"), as debtors and debtors in possession in the above-captioned chapter 11 cases, respectfully submit this Motion to Dismiss Plaintiffs' Complaint (the "Motion") and seek entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**.  In support of the Motion, the Debtors state as follows:

## INTRODUCTION

1.      Plaintiffs' case is one of several adversary cases filed by customers seeking to escape the effects of the Earn Order and hasten individual recovery over other similarly situated creditors.  The inequity of Plaintiffs' desired outcome is clear on its face and should not be countenanced.  Plaintiffs complain that they were not permitted to withdraw the cryptocurrency assets they had deposited with Celsius when the "Pause" was enacted by Celsius on June 12, 2022.  This is exactly the harm that all of the other Earn creditors suffered, and as detailed in this Court's Earn Order, Plaintiffs (and other Earn creditors) have a contractual claim under the Terms of Use for the return of the cryptocurrency that such customers deposited on Celsius' platform.

2.      As the Earn Order recognized, the Debtors do not have enough cryptocurrency to pay all creditors in full, and individuals should not be rewarded for racing to the courthouse first.  The Court's Earn Order established the Debtors' ownership over assets deposited into the Earn Accounts.  That Order also held that in the interests of fairness and equity, any claims related to Earn Account assets, like those alleged here, were reserved for the claims resolution process.  The Court should apply the law of the Earn Order here to dismiss Plaintiffs' complaint in full, as it has already rejected similar arguments by other customers on several occasions.

3.      Even if not categorically barred by the Earn Order, Plaintiffs' Complaint nonetheless fails to plead facts sufficient to support their various causes of action for fraud, conversion, establishment of a constructive trust, and unjust enrichment.  Thus, any claims that can be asserted here must still be dismissed for failure to state a claim upon which relief can be granted.

## STATEMENT OF CONSENT

4.      The Debtors confirm their consent to the Court entering final orders or judgments in connection with this adversary proceeding.

## FACTUAL BACKGROUND

### I.      Celsius' Chapter 11 Cases.

5.      Celsius is a crypto-based financial platform that provides financial services to institutional, corporate, and retail customers across more than 100 countries.  Celsius was created in 2017 and was one of the first cryptocurrency platforms that allowed customers to transfer their cryptocurrency assets and (a) earn rewards on those assets through an "Earn Account" and/or (b) take out loans using those assets as collateral through a "Borrow Account."[1]

6.      On June 12, 2022, in an effort to stabilize its business and protect its users, Celsius paused all withdrawals, swaps, and transfers on its platform (the "Pause").  "The Pause was intended to prevent certain users—those who were the first to act—from being paid in full while leaving other users behind to wait for Celsius to harvest value from illiquid or longer-term asset deployment activities before they received a recovery."  First Day Declaration ¶ 23.  Because of

---

[1]      A full description of Celsius' business operations and the facts and circumstances leading to these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Case No. 22-10964, Dkt. No. 23] (the "First Day Declaration").

the Pause, customers were, among other things, prevented from withdrawing assets from their Celsius accounts.

7.        On July 13, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

## II.    The Earn Motion and Order.

8.        As recognized by the Debtors and the Court from the earliest days of these chapter 11 cases, a critical threshold issue to resolve was the ownership of the assets transferred by customers into the Debtors' Earn Accounts.

9.        Through a series of motions, the Debtors teed up that precise issue for resolution. *See Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief* [Case No. 22-10964, Dkt. No. 832]; *Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Case No. 22-10964, Dkt. No. 1325] (the "Earn Motion").  Specifically, the Earn Motion requested that the Court answer "the largest question relating to property of the estate: who holds title to the assets transferred into the Debtors' earn program and any proceeds thereof."  Earn Motion ¶ 1.  The Earn Motion "d[id] not seek findings with respect to (x) the ownership of assets in the Debtors' Custody Program, Withhold Accounts, or Borrow Program or (y) whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use, and all parties' rights [were] reserved with respect to each of the foregoing."  *Id.* at ¶ 16.

3

10.     On December 5, 2022, following extensive briefing, the Court held an evidentiary hearing on the Earn Motion wherein the Debtors' counsel, counsel to the UCC, the United States Trustee, state regulators, and numerous represented and *pro se* creditors had an opportunity to present evidence and argument.

11.     On January 4, 2023, the Court issued its *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Case No. 22-10964, Dkt. No. 1822] (the "Earn Order"), which concluded "that the Terms of Use formed a valid, enforceable contract between the Debtors and Account Holders, and that the Terms unambiguously transfer title and ownership of Earn Assets deposited into Earn Accounts from Account Holders to the Debtors." Earn Order at 30.

12.     In so holding, the Earn Order recognized the patent inequity in some customers prevailing on their arguments and recovering 100 percent of the assets in their accounts while leaving others to hold the proverbial bag:

> A fundamental principle of the Bankruptcy Code is equality of distribution. There simply will not be enough value available to repay all Account Holders in full. If only some Account Holders prevail with their arguments that they own the cryptocurrency assets in their accounts, they hope to recover 100% of their claims, while most of the Account Holders are left as unsecured creditors and may recover only a small percentage of their claims.

*Id.* at 6.

13.     The Earn Order established the Debtors' ownership over assets in the Earn Accounts and explained that creditors seeking to rebut that presumptive ownership could do so through the claims allowance process. At multiple points in the Earn Order, the Court explicitly noted that its findings "d[id] not mean holders of Earn Assets will get nothing from the Debtors." *Id.* at 30. Rather, "[t]he amount of allowed unsecured claims is subject to later determination in this case (through the claims allowance process) and may potentially include damages asserted by

Account Holders, *including breach of contract, fraud or other theories of liability*." *Id.* (emphasis added); *see also id.* at 45 ("[C]reditor's rights with respect to various defense to and breach of contract claims are reserved. Creditors will have every opportunity to have a full hearing on the merits of these arguments *during the claims resolution process*." (emphasis added)). The Court reiterated that it "t[ook] seriously potential violations of state law and non-bankruptcy federal law, as well as the litany of allegations including, but not limited to, fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable," and emphasized that those claims were "explicitly reserved for the claims resolution process." *Id.* at 43.

14.    This Court has already denied three customer motions on the basis of to the Earn Order. On January 6, 2023, the Court denied Kwok Mei Po's motion seeking a ruling that she held full title and ownership to funds in her Earn Accounts. *See Order Denying Kwok Mei Po's Motion Seeking a Ruling of Full Ownership of Funds* [Case No. 22-10964, Dkt. No. 1833] (the "Po Denial"). The Court stated that though Po may have "colorable claim[s]" for breach of contract, including claims that Celsius improperly froze or suspended her accounts or "fail[ed] to return funds upon closing her accounts," none of those claims "would not affect the ownership of cryptocurrency deposited in Po's Earn Accounts." *Id.* at 3–4. The Court therefore held that Po should "assert [her breach-of-contract] claims in the claims-allowance process." *Id.* at 4.

15.    On January 25, 2023, this Court once again invoked the Earn Order to deny Kulpreet Khanuja's motion for a ruling that his Earn assets are not part of the Debtors' bankruptcy estates. *See Order Denying Kulpreet Khanuja's Motion Seeking a Ruling that Personal Earn Assets Are Not Property of the Debtors' Estates* [Case No. 22-10964, Dkt. No. 1934] (the "Khanuja Denial"). Among other things, Khanuja claimed that Celsius "prevented" him from withdrawing

assets from the platform despite his intentions to do so.  *Id.* at 2.  Similar to the Kwok Denial, the Court ruled that Khanuja's general claims to ownership of the Earn Assets were precluded by the Earn Order.  *Id.* at 2–3.  The Court further addressed Khanuja's unique claim, based on his "individual circumstances," that the Debtors prevented him from being able to withdraw assets from his account before the Pause and that he was entitled to the assets that he attempted to withdraw.  *Id.* at 3.  The Court held that although these circumstances might "create a colorable claim for a breach of contract," they "would not affect the ownership of cryptocurrency deposited in Khanuja's account."  *Id.* at 3–4.  The Court further stated that "[i]f Khanuja believe[d] he has compensable claims against Celsius (beyond the amount on deposit in his accounts) based on Celsius's failure to return funds upon his withdrawal demand, he c[ould] file a proof of claim and assert such claims in the claims-allowance process."  *Id.* at 4.

16.     Also on January 25, 2023, the Court denied Rebecca Gallagher's motion for a ruling that her Earn assets are not part of the Debtors' estates on similar grounds.  *See Order Denying Rebecca Gallagher's Motion Seeking a Ruling that All the Coins Deposited in Celsius Earn Are Her Property* [Case No. 22-10964, Dkt. No. 1933] (the "Gallagher Denial").  In that ruling, the Court again noted that pursuant to the Earn Order, any contract defenses or breach-of-contract claims were "reserved for the claims resolution process."  *Id.* at 2.

## III.     **Plaintiffs' Adversary Case.**

17.     On February 28, 2023, Plaintiffs Georges Georgiou ("Mr. Georgiou"), Philip Harris Stewart ("Mr. Stewart"), and Gilbert Castillo ("Mr. Castillo") (collectively, "Plaintiffs") filed their *Complaint* [Adv. Pro. No. 23-01016, Dkt. No. 1] (the "Complaint").

18.     Plaintiffs allege that they each attempted to withdraw assets from their Earn Accounts on June 12, 2022—the date of the Pause—and were permitted to initiate those withdrawals, but never ultimately received the assets.  Compl. ¶¶ 27, 32, 38, 44.

19.     Mr. Georgiou took out a loan for $250,000 through the Borrow program on February 23, 2022 (the "Georgiou Loan"), which was collateralized by 26.532 Bitcoin ("BTC"). Compl. ¶ 21.  On June 12, 2022, Mr. Georgiou alleges that he paid off his loan in full and that his collateral was released to his Earn Account. *Id.* ¶ 23–24.  Mr. Georgiou further alleges that upon the movement of the assets to the Earn Account, he attempted to initiate a withdrawal of those assets. *Id.* ¶ 25–26.  Mr. Georgiou alleges that upon initiation of a withdrawal of his assets, his Earn Account reflected a transfer of funds, but that he never received the transfer to his external wallet. *Id.* at 27–31.  Mr. Georgiou alleges that his withdrawal was designated by Celsius as "In Progress" and "Pending" until October 6, 2022, when it was redesignated as "Cancelled." *Id.* at ¶¶ 27–29.

20.     Mr. Stewart alleges that he attempted to initiate a withdrawal of 6.100 BTC from his Earn Account on June 12, 2022. *Id.* ¶ 32.  Mr. Stewart alleges that following the initiation of his withdrawal, his Earn Account reflected a deduction of those assets, but that he never received the assets to his external wallet. *Id.* at ¶¶ 34–35.  Mr. Stewart alleges that Celsius' transaction data designated his withdrawal as "In Progress" and "Pending" until October 12, 2022, when it was redesignated as "Cancelled." *Id.* at ¶¶ 33–37.

21.     Mr. Castillo alleges that he attempted to initiate a withdrawal of 501,377.78 USD Coin ("USDC") from his Earn Account on June 12, 2022. *Id.* at ¶ 38, 40.  Mr. Castillo alleges that Celsius transaction data showed his withdrawal as "In Progress" or "Pending" until October 5, 2022, when it was redesignated as "Cancelled." *Id.* at ¶ 41.

22.     Plaintiffs assert nine causes of action in their Complaint, including fraud, conversion, "failure of contract,"[2] unjust enrichment, declaratory judgment establishing a

---

[2]     Plaintiffs' Fourth and Eighth Claims for Relief allege "Failure of Contract," ostensibly arguing that no contract governed the parties' relationship following initiation of their respective withdrawal requests. *See* Compl. ¶¶ 65–

constructive trust, and declaratory judgment that their assets are not property of the estate.[3]  *See id.* ¶¶ 46–104.

23.     Plaintiffs' Complaint is devoid of any allegations of damages in excess of the amounts in their respective Earn Accounts.

## **LEGAL STANDARD**

24.     Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, states that a cause of action must be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

25.     On a Rule 12(b)(6) motion to dismiss, courts may consider "facts stated on the face of the complaint, … documents appended to the complaint or incorporated in the complaint by reference, and … matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d

---

71, 91–96.  Because there is no cause of action for "Failure of Contract" under New York law, these claims should be dismissed. *Cf. Hoo-Chong v. Citimortgage, Inc.*, 2016 WL 868814, *4 (E.D.N.Y. Mar. 7, 2016) ("Since Plaintiff's common law privacy claim is not a valid cause of action in New York, it is DISMISSED.").  To the extent Plaintiffs' allegations could be liberally construed to state a cause of action, these allegations sound in unjust enrichment.

[3]   Plaintiffs fail to identify the state law under which they assert their non-contract claims.  As such, the Debtors evaluate Plaintiffs' claims under New York law.  *See Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 573–74 n.11 (S.D.N.Y. 2018) ("[B]ecause the parties suggest no alternative, Plaintiff's state law claims are analyzed under New York law.").

554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.,* 817 F.3d 46, 51 n.2 (2d

Cir. 2016).

## **ARGUMENT**

I.    **Plaintiffs' Claims Should Be Dismissed Pursuant to the Earn Order and the Law of the Case.**

26.    After extensive briefing, an evidentiary hearing, and nearly a month of deliberation,

this Court issued its Earn Order on January 4, 2023.  In that Order, this Court held "that the Terms

of Use formed a valid, enforceable contract between the Debtors and Account Holders" and that

those Terms "unambiguously transfer title and ownership of Earn Assets deposited into Earn

Accounts from Accounts Holders to the Debtors."  Earn Order at 30.  Accordingly, the Earn Order

held "that Earn Assets in Earn Accounts constitute property of the Estates."  *Id.* at 45.  The Order

further held that claims of breach of contract, fraud, and violations of state and federal law, among

others, were "subject to later determination in this case (through the claims allowance process)."

*Id.* at 30.  This Court has subsequently invoked the Earn Order to deny three motions by customers

seeking to establish ownership of their Earn Account assets.  *See generally* Po Denial; Khanuja

Denial; Gallagher Denial.

27.    The law of the case doctrine provides that "when a court decides upon a rule of law,

that decision should continue to govern the same issues in subsequent stages in the same case."

*Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7–8 (2d Cir. 1996) (quoting *DiLaura v.*

*Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1991)); *see also In re PCH Assocs.*, 949 F.2d 585, 592 (2d

Cir. 1991) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of

a case becomes binding precedent to be followed in subsequent stages of the same litigation.").

The doctrine is informed "by considerations of fairness to the parties, judicial economy, and the

societal interest in finality."  *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009); *see also In re*

*PCH Assocs.*, 949 F.2d at 592.  Courts apply the law of the case doctrine "when the[] prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication."  *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001).  Absent "compelling reasons counsel[ing] otherwise," "a court should adhere to its earlier decisions in subsequent stages of litigation."  *In re Motors Liquidation Co.*, 585 B.R. 708, 725 (Bankr. S.D.N.Y. 2018) (Glenn, J.) (quoting *Tomasino v. Estee Lauder Cos., Inc.*, 2015 WL 1470177, at *1 (E.D.N.Y. Mar. 31, 2015)).

28.    Bankruptcy courts in this district have applied the law-of-the-case doctrine to dismiss adversary complaints threatening duplicative and inefficient processes.  In *In re AMR Corp.*, for instance, the bankruptcy court dismissed claims in an adversary proceeding where it found that the claims were "simply a thinly veiled attempt to make an end run around the prior rulings [in the other adversary proceeding]".  *See* 567 B.R. 247, 255 (Bankr. S.D.N.Y. 2017).  The court noted that those prior rulings "reflected a concern about the duplication of claims and inefficiency in the litigation of these disputes."  *Id.* at 257.

29.    Similarly, in *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, the bankruptcy court dismissed claims in an adversary proceeding that raised issues and arguments "substantially similar" those previously considered and rejected by the court.  2020 WL 3067733, at *11(Bankr. S.D.N.Y. June 8, 2020).  There, the adversary plaintiff filed a "rejection motion" objecting to the confirmation of the final bankruptcy plan, despite not previously appealing the bankruptcy court's confirmation order.  *Id.* at *5.  The bankruptcy court denied the rejection motion, and the plaintiff appealed to the district court and Second Circuit, both of which denied the motion.  *Id.* at *5–6.  The plaintiff then filed an adversary complaint, "again bas[ing] her arguments on the same issues that were previously raised and litigated" thrice over.  *Id.* at *11.  Because the adversary proceeding

formed "part of the same 'case'" as the prior rulings, and because the complaint was "substantially similar" to the rejection motion, the bankruptcy court applied the law-of-the-case doctrine to dismiss the plaintiff's adversary proceeding.  *See id.* at *11–*12.

30.     Here, the Earn Order held "that the Terms of Use formed a valid, enforceable contract between the Debtors and Account Holders."  Earn Order at 30.  The Order further held that the unambiguous language of the Terms of Use established that the assets in Earn Accounts were property of the Estate.  *Id.* at 38–39, 45.  Finally, the Court held that unsecured creditors' claims, like those alleging "violations of state law," as well as "fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable," were "explicitly reserved for the claims resolution process."  *Id.* at 43.

31.     Plaintiffs' claims fall directly within the ambit of the Earn Order.  Plaintiffs' Second, Fifth, and Sixth Claims for Relief seek declaratory judgment that Plaintiffs' assets are not property of the estate, alleging that the General Terms of Use ceased to apply to Plaintiffs' assets when they attempted to initiate withdrawals from their Earn Accounts (Second and Fifth Claims for Relief) or that the General Terms of Use never applied to the assets at all (Sixth Claim for Relief).[4]  *See* Comp. ¶¶ 52–58, 72–82.  The Earn Order held the exact opposite, determining that assets in the Earn Accounts, including Plaintiffs', were presumptively property of the estate, "subject to any reserved defenses."  Earn Order at 30.  To the extent these allegations can be read to assert colorable contract defenses to the applicability of the General Terms of Use, those claims must be asserted during the claims allowance process and "do not bear on the question of title and ownership" to the Plaintiffs' assets.  *See id.* at 43.  These causes of action therefore must be dismissed.

---

[4]     The sixth cause of action seeks declaratory judgment only as to Plaintiff Georgiou.  *See* Compl. ¶¶ 78–82.

32.    The Earn Order bars Plaintiffs' other causes of action from going forward in this proceeding as well.   Those claims, alleging fraud, conversion, "failure of contract," unjust enrichment, and establishment of a constructive trust, similarly attempt to distinguish Plaintiffs from other Earn Account holders in an effort to increase individual recovery.   Even if Plaintiffs have colorable claims for additional damages beyond the amounts in their Celsius Accounts— which, for the reasons stated below, they do not—the Earn Order requires that Plaintiffs submit proofs of claim for those additional damages and litigate those claims through the claims process. *See id.* at 30 ("The amount of allowed unsecured claims is subject to later determination in this case (through the claims allowance process) and may potentially include damages asserted by Account Holders, including breach of contract, fraud or other theories of liability."); *cf.* Khanuja Denial at 3–4 (holding that claims based on Khanuja's "individual circumstances" related to the "failure to return funds upon his withdrawal demand" were breach of contract claims that should be brought through the claims allowance process).   Plaintiffs cannot "make an end run around" that claims process in an attempt to augment their individual recovery, to the detriment of other similarly situated creditors.   *In re AMR*, 567 B.R. at 255.

33.    During the claims allowance process, Plaintiffs—and all other similarly situated creditors—will have "every opportunity to have a full hearing on the merits of the[ir] arguments." Earn Order at 45.   Before then, however, the Earn Order precludes some individuals from seeking to jump the line, litigate their claims, and recover 100 percent of their assets ahead of other customers.

## II.    The Contractual Relationship Between Celsius and the Plaintiffs Precludes Several of Plaintiffs' Claims.

34.    Even if Plaintiffs are not barred from bringing their claims in this adversary proceeding by the Earn Order, several causes of action must be dismissed for failure to state a

claim. Specifically, the existence of valid, enforceable contracts between the parties precludes Plaintiffs' claims for unjust enrichment, conversion, and declaratory judgment establishing a constructive trust.

### A.    Unjust Enrichment

35.    Plaintiffs' unjust enrichment causes of action fail to state a claim because the General Terms of Use govern the relationship between the parties. Plaintiffs' Ninth Claim for Relief alleges unjust enrichment stemming from the Debtors' alleged improper retention of their Earn Account assets following Plaintiffs' respective attempts to initiate withdrawals. To the extent Plaintiffs' Fourth Claim for Relief and Plaintiff Georgiou's Eighth Claim for Relief for "failure of contract" are not dismissed for failure to state any cognizable legal claim under New York law, they should be construed as unjust enrichment claims as well. Because the General Terms of Use govern the parties' relationship, however, these causes of action for unjust enrichment must be dismissed.

36.    Unjust enrichment claims, like other quasi-contract claims, are "not permitted when an express agreement exists that governs the dispute between the parties." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 513 (S.D.N.Y. 2013); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). "This doctrine clearly bars unjust enrichment claims when both parties to the lawsuit are also parties to the contract itself." *Am. Med. Ass'n v. United Healthcare Corp.*, 2007 WL 683974, at *9 (S.D.N.Y. Mar. 5, 2007).

37.    The respective relationships between Plaintiffs and the Debtors are governed by the General Terms of Use, which formed a binding contract between the parties with respect to this dispute. *See* Earn Order at 31 ("[T]he Terms of Use formed a valid, enforceable contract between

the Debtors and each Account Holders . . . ."); *id.* at 44 ("[T]he Court finds that there was a valid contract between Celsius Account Holders and Celsius and that the contract terms unambiguously transferred all right and title of digital assets to Celsius.").[5]  Contrary to Plaintiffs' assertions, those Terms did not cease to exist when Plaintiffs attempted to withdraw assets from their Earn Accounts.  Plaintiffs therefore fail to state any claim for unjust enrichment.

### B.  Conversion

38.     Plaintiffs' Third Claim for Relief alleging conversion of their assets similarly fails because the General Terms of Use govern the parties' dispute.  Under New York law, "a claim for conversion is prohibited where the subject matter of the claim is covered by a valid and binding contract."  *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 620 (S.D.N.Y. 2014); *see also Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("[A]ttempts to repackage [contractual disputes] as sounding in fraud, conversion, and other torts, as well as unjust enrichment, implied and quasi contract, and quantum meruit, are generally precluded, unless based on a duty independent of the contract.").

39.     Plaintiffs' own pleadings belie their claim for conversion.  Plaintiffs allege: "Under the Earn Account Agreement, Complainants had the immediate right to exercise their call options and cancel their loans to Celsius."  Compl. ¶ 60.  Plaintiffs' conversion claim hinges on the Debtors' purported obligation *under the General Terms of Use* to return their digital assets.  As stated above, those Terms did not cease to exist when Plaintiffs attempted to withdraw assets from their Earn Accounts.  The parties' conduct was at all times governed by the General Terms of Use and therefore a claim for conversion cannot lie.

---

[5]   To the extent any Plaintiffs argue that they did not consent to the General Terms of Use, *see* Compl. ¶ 95, the Earn Order explicitly reserved such contract-formation defenses for the claims allowance process. *See* Earn Order at 43.

### C.      Constructive Trust

40.      The Seventh Claim for Relief, relevant only to Plaintiff Georgiou, seeking declaratory judgment establishing a constructive trust must also be dismissed.  Georgiou alleges that he had a fiduciary relationship with Celsius, that the terms of his Borrow Agreement required the release of his collateral following the repayment of his loan, that he relied on this provision in transferring his payment in satisfaction of his loan, and that the Debtors were unjustly enriched when they transferred Georgiou's collateral to his Earn Account following the satisfaction of his loan.  Georgiou's claim for declaratory judgment establishing a constructive trust is precluded by the Borrow Agreement that governs the parties' dispute.

41.      New York law requires four elements to establish entitlement to a constructive trust remedy: (a) a confidential or fiduciary relationship; (b) a promise, express or implied; (c) a transfer made in reliance on that promise; and (d) unjust enrichment.  *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004).  The unjust enrichment element "is the most important since 'the purpose of the constructive trust is prevention of unjust enrichment.'"  *Id.* (quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978).  As noted above, an unjust enrichment claim is "not permitted when an express agreement exists that governs the dispute between the parties."  *BNP Paribas Mortg. Corp.*, 949 F. Supp. 2d at 513.

42.      As Georgiou's pleadings admit, the Borrow Agreement governed the relationship between himself and the Debtors with respect to his loan, including the transfer of collateral following satisfaction of the loan.  *See* Compl. ¶ 86.  And the terms of that Agreement clearly provide that upon payment of the loan, Georgiou's collateral would be released "to [his] Celsius Account"—that is, his Earn Account.  *Id.* at ¶ 24.  The Borrow Agreement governs the parties'

dispute here, therefore precluding a claim for unjust enrichment and, by extension, a claim for a constructive trust.[6]

43.    The other constructive trust elements are similarly not met: The General Terms of Use—to which all customers were required to agree—explicitly disclaim the establishment of any fiduciary relationship upon the use of any service, including the Borrow service.  *See* General Terms of Use § 10 ("These Terms and your use of any Services do not create a fiduciary relationship between us and you …."). Furthermore, Georgiou fails to identify any promise that he relied on in making his transfer.  Though Georgiou mischaracterizes the terms of the Borrow Agreement as providing "that Collateral will be released upon the repayment in full of the Loan," Compl. ¶ 86, the Complaint elsewhere admits that those terms state only that "[s]hould [the borrower] make a full Early Repayment of [their] Loan in accordance with the terms hereof, Celsius shall release the Collateral *to [their] Celsius Account*."  *Id.* at ¶ 24 (emphasis added). Georgiou's contradictory pleadings do not state the necessary elements for a constructive trust.

## III.    <u>Plaintiffs Fail To State a Claim for Fraud</u>.

44.    Plaintiffs also fail to state a claim for fraud.  Under New York law, fraud requires "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, *justifiable reliance* of the other party on the misrepresentation or material omission, and injury."  *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996) (emphasis added).  "Plaintiff cannot sustain a cause of action for fraud if defendant's misrepresentation did not form the basis of reliance."  *Sec. Inv. Prot. Corp. v. BDO Seidman, L.L.P.*, 95 N.Y.2d 702, 709 (2001).  To plead reliance, a plaintiff

---

[6]    Even if Georgiou argues that the Borrow Agreement was terminated upon repayment of his loan, the General Terms of Use remained in effect and governed the parties' relationship, including the treatment and ownership of the collateral transferred into his Earn Account.

must "allege that it was induced to act or refrain from acting to its detriment by virtue of the false representation. *Ideal Steel Supply Corp. v. Anza*, 882 N.Y.S.2d 190, 191 (N.Y. App. Div. 2009).

45.    Here, Plaintiffs' fraud claim fails because Plaintiffs have not relied on the alleged misrepresentations.  Plaintiffs allege that in October 2022—after the institution of these chapter 11 cases—the Debtors "intentionally altered their own historical data to make it appear that Complainants' withdrawals were never processed in an attempt to mislead Complainants and the Court as to treatment and classification of the Assets."  Compl. ¶ 47.  Plaintiffs allege that the alteration "was false and misleading." *Id.* at ¶ 48.  Importantly, all relevant actions by the Plaintiffs occurred months *prior* to the alleged alterations of transaction data. *Id.* at ¶¶ 21–43 (alleging that Plaintiffs attempted to make withdrawals on June 12, 2022, and that Debtor altered transaction data in October 2022).  Plaintiffs identify no action or inaction taken in reliance upon the purported misrepresentations and, consequently, fail to state a claim for fraud.

## CONCLUSION

46.    For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its entirety as to all Debtors.

*[Remainder of Page Intentionally Left Blank]*

Washington, D.C.

Dated: May 17, 2023

/s/ T.J. McCarrick
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:      (202) 389-5000
Facsimile:      (202) 389-5200
Email:          judson.brown@kirkland.com
                tj.mccarrick@kirkland.com
                leah.hamlin@kirkland.com

- and -

Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| GEORGES GEORGIOU, PHILIP HARRIS STEWART, and GILBERT CASTILLO, Plaintiffs, v. | Adversary Proceeding No. 23-01016 (MG) |
| CELSIUS NETWORK LLC, *et al.*; Defendants. | |

## ORDER GRANTING DEBTORS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") dismissing the Complaint as more fully set forth in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, dated February 1, 2012, and the Court having found this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not defined in this Order have the meanings given to such terms in the Motion.

U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    Plaintiffs' Complaint is dismissed in its entirety.

New York, New York
Dated: _____, 2023

_____
MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY
JUDGE