Adrienne Woods, Esq.
Omid Zareh, Esq.
**Weinberg Zareh Malkin Price LLP**
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
Ph: (917) 447-4321
awoods@wzmplaw.com
ozareh@wzmplaw.com

*Counsel to Plaintiffs Georges Georgiou,*
*Philip Stewart, and Gilbert Castillo*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, et al.,[1]<br><br>        Debtors.<br>_____/ | Chapter 11<br>Case No. 22-10964 (MG)<br>(Jointly Administered) |
| Georges Georgiou, Philip Stewart, and Gilbert Castillo,<br><br>        Plaintiffs<br><br>v.<br><br>CELSIUS NETWORK LLC, et al.,<br><br>        Defendants.<br>_____/ | Adv. Pro. No. 23-01016 (MG) |

**PLAINTIFFS' OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

---

[1] The defined terms herein, including "Debtors" shall have the same meaning as that of the Complaint, filed 2/28/23, Docket #1.

**PRELIMINARY STATEMENT**

1. Plaintiffs commenced this Adversary Proceeding by filing a detailed, well-plead Complaint, supported by multiple exhibits, explaining how *after the term* of using the Defendants' crypto asset-based platforms, the Defendants misappropriated the Plaintiffs' assets. Significantly, the Complaint states that, **under their own terms, the Parties' agreement(s) terminated,** and the assets were to have been returned.

2. In clear terms, with multiple exhibits, and in excess of one hundred paragraphs, the Complaint detailed:

    - the Plaintiffs' had instructed their assets be removed from the Earn Accounts,[2]

    - the Defendants acknowledged that the assets were no longer in the Earn Accounts including, without limitation, by ceasing to give Reward payments on those assets,[3]

    - the Defendants continued to state – for months – that the assets remained outside of the Earn Accounts and were "pending" delivery,[4] and

    - the Defendants improperly returned the Plaintiff's assets to the Earn Accounts after the contract was terminated, outside of any agreement with Plaintiffs, contrary to the Plaintiffs' express direction and without consent, express or implied.[5]

3. In response, the Defendants have moved to dismiss this Adversary Proceeding, pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss"), claiming that the Complaint alleges a "contractual claim under the Terms of Use"[6] and that this Court already has ruled that title to all assets under the Earn Account were the property of the Debtors in the Earn Account Opinion.[7] The Defendants ignore that the Complaint is not based on breach of contract, however, and essentially argue that the present Adversary Proceeding should be treated like other distinguishable, and factually-inconsistent, cases.

---

[2] See Complaint at paras. 25, 32, and 38.
[3] See Complaint at paras. 27, 35, and 40.
[4] See Complaint at paras. 26, 33, and 39.
[5] See Complaint at 29, 36, and 41
[6] Motion to Dismiss p. 8.
[7] Motion to Dismiss at paras. 8 and 11 (citing to the Earn Account Opinion).

2
Weinberg Zareh Malkin Price LLP

4. It is black letter law that the factual allegations in the Complaint are to be taken as true for purposes of this Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)[8].

5. Moreover, the Defendants did not introduce new information regarding these specific accounts, or the specific transaction at issue, here. To the contrary, they do not even attempt to address the very detailed allegations in the Complaint in *this* Adversary Proceeding (*e.g.*, that cryptocurrency was withdrawn from the Earn Account "immediately" upon instruction pursuant to the Terms of Use upon which they rely, the Defendants acknowledged withdrawal of the cryptocurrency and treated it as withdrawn by ceasing to pay Rewards, and after a period of several months, the Defendants improperly redeposited the cryptocurrency back into the Earn Accounts without agreement - whether under the Terms of Use or otherwise).

6. The Complaint does not dispute the validity of the Earn Account Opinion or its binding impact. Pursuant to the Terms of Use, however, the Plaintiffs' assets were no longer part of the Earn Accounts. The Defendants acknowledged that the assets were no longer in the Earn Accounts, and payment back to the Plaintiffs was "pending." Indeed, the Defendants themselves stopped paying Rewards on the Plaintiffs' assets, thereby acknowledging the assets had left the Earn Account – for several months. Then, as detailed in the Complaint, the Defendants unilaterally – *without any contractual right or consent, and without any pretense of justification* – illegally took the Plaintiff's assets and returned them into the Earn Accounts.

7. This point distinguishes the present Adversary Proceeding from the precedents relied upon by the Defendants, paragraph after paragraph, about the "law of the case" and prior determinations. As discussed below, these other decisions are factually, and legally,

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

3
Weinberg Zareh Malkin Price LLP

distinguishable. For example, the Defendants refer to the cases involving Kwok Mei Po, Kulpreet Khanuja, and Rebecca Gallagher, where Plaintiffs claim intent to withdraw funds from their respective Earn Accounts. Here, however, there simply was no second "click thru" or any other consent to putting the *assets back into the Earn Account, after the original term of the Agreement was terminated.* Furthermore, a key difference with this Adversary Proceeding is that Defendants confirmed the withdrawals of Mr. Georgiou, Mr. Stewart, and Mr. Castillo before subsequently claiming they were never confirmed.

8. Whether or not the Defendants can offer any right or justification for their behavior, or explain their clear deviation from the Terms of Use, they do not meet their burden to dismiss this Adversary Proceeding.

I. FACTUAL BACKGROUND

9. The relevant facts are stated in detail in the Complaint and supported by the accompanying exhibits. Ex. 1, and incorporated herein. [9]

10. In brief, Plaintiffs have at least the following common claims, stemming from (i) their exercise of call options pursuant to the Earn Account Terms of Use, (ii) which Terms of Use provided that each had the right to exercise their call options "to demand **immediate**, complete or partial repayment of any loan ***at any time***"[10], (iii) the Defendants acknowledgment of the Plaintiffs' exercise of their call options and cessation of Rewards for the Plaintiffs' assets, and (iv) Defendants *extra*-contractual actions in keeping or redepositing the assets into the Plaintiffs' respective Earn Accounts *months* later – completely outside of the Terms of Use which already terminated, far from pursuant to contract, and without any permission whatsoever.

---

[9] See Complaint pp. 22-123
[10] Terms of Use, § 11 Withdrawals at 550.

4

11. Pursuant to the Terms of Use, the Defendants recognized that the assets had been "immediately" withdrawn. As alleged in the Complaint, Earn Account customers received Rewards on their cryptocurrency deposits. The Plaintiffs, however, ceased to receive Rewards upon withdrawing their assets from their Earn Accounts – as was appropriate pursuant to Section 11 of the Terms of Use ("such repayment will terminate in whole or part your loan and you shall no longer accrue rewards on the amount of loans as your exercise of the call option."). While the assets ultimately never reached the Plaintiffs' wallets, the lack of Rewards that accrued on the Plaintiffs' cryptocurrency supports the Plaintiffs' position that the *Defendants also viewed these assets to have been removed from the Earn Accounts* pursuant to the Terms of Use.

12. Under these facts – being assumed as true, as they must – this Court's Earn Account Opinion simply does not apply. Previous so-called "law of the case" determinations do not address these facts, nor do the Defendants get to re-draft the Complaint to paint the facts within those addressed by the Earn Account Opinion. Neither the Earn Account Opinion, nor the three other so-called "law of the case" decisions cited by the Defendants, addresses transfer of assets *back into Earn Accounts in October after the "contract(s) "immediately" terminated previously, in June.* As discussed, below, these specific details, are *not* discussed in the Earn Account Opinion, nor in previous decisions regarding the ownership of assets dictated by the Earn and Borrow Agreements.

13. The Terms of Use provided that depositors had the right to exercise their call options "to demand **immediate**, complete or partial repayment of any loan **at any time.**" The Plaintiffs exercised their call options, and the Defendants acknowledged that action by removing the assets from the Earn Accounts and ceasing payment of Rewards. This signaled termination of the Earn Account Agreements as between the Plaintiffs and the Defendants, and there was no subsequent agreement to reinstate the Earn Account Agreements. Accordingly, the Motion to Dismiss must be denied.

Weinberg Zareh Malkin Price LLP

## II.    LEGAL ARGUMENT

### A. Defendants Have Not Met their Burden.

14. The Motion to dismiss is premised on Fed. R. Civ. P. 12(b)(6). The gravamen of the Motion to Dismiss is that: First, that Plaintiffs "want to escape the effects of the Earn Order" resulting in "inequity" and that the Plaintiffs must abide by the fact that their assets belong to the Debtor under the Terms of Use Agreement(s).[11] Second, that the Complaint fails to "plead facts sufficient to support their various causes of action[.]" Neither of these positions is supported by the actual facts pled. The Defendants misconstrue the actual pleadings within the Complaint to paint the Plaintiffs with the same broad brush as other, past litigants. The circumstances actually detailed, however, are quite different, and all the legal elements have been met.

15. Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding such a motion, a court must accept as true the facts alleged in the complaint, but it should not assume the truth of its legal conclusions. *Iqbal*, 556 U.S. at 678-79. A court must also draw all reasonable inferences in the plaintiff's favor, and it may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. *ATSI Commc'ns, Inc. v. Shaar Fund. Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Complaint contains sufficient factual matter and is plausible on its face. The Plaintiffs' allegations are not mere conclusory statements, but detailed descriptions of specific events, screen shots, confirmations of "immediate" instructions and actions, documents and other evidence of the Defendants' extracontractual misconduct. Thus, the Complaint satisfies the standard set forth by Fed. R. Civ. P. 12(b)(6).

---

[11] Motion to Dismiss numbered paras 1-2.

16.   Taking the factual averments in the Complaint and its attachments as true as required by Rule 12(b)(6), the Plaintiffs case clearly does *not* sound in breach of contract, as Defendants infer.  Indeed, as the Complaint clearly sets forth, the Earn Account Agreements were **terminated** by the Plaintiffs' exercise of their call options and the Defendants' subsequent removal of the assets from the Plaintiffs' Earn Accounts.  Thus, the Defendants' actions were *extra*-contractual and firmly outside the Terms of Use – or any other consensual relationship.  As discussed in the Complaint, and above, the Plaintiffs allege that the Defendants later returned the assets into their Earn Accounts *months later and without mutual agreement.*  There was no contract.

B. <u>The "Law of the Case" Doctrine is Inapplicable.</u>

17.   Defendants argue that the "law of the case" doctrine applies, thereby precluding this Adversary Proceeding.  This, however, is a specious argument, relying on a misapplication of the "law of the case" doctrine.

18.   The "law of the case" doctrine provides that once "a court decides upon a rule of law, that decision should continue to govern the *same issues* in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (emphasis added); *see also United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011) ("As a general matter, this Court will adhere to its own decision made at an earlier stage of the litigation.") (internal quotation marks and citation omitted).  "Law of the case and *res judicata* are closely related legal concepts both resting on policy considerations favoring putting an end to litigation, saving judicial time, and bringing certainty to legal relations." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) (*citing Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)).  "The doctrine of law of the case is similar to . . . res judicata in that it limits relitigation of an issue once it has been decided." *Id.* at 148.

19.   Here, Plaintiffs' claims are substantially different from any issues addressed in prior "law of the case."  There was no prior determination where depositors exercised their call options,

7

had their assets removed from their Earn Accounts, ceased to receive Rewards on assets *previously* located in the Earn Accounts consistent with the Earn Account Terms of Use, then, months later, had their assets redeposited into Earn Accounts *extra-contractually*. The Defendants' unilateral decision to return assets to the Earn Accounts, *after* the Terms of Use were no longer in effect, did not create a new contract and, moreover, has not previously been addressed.

20. The *Gallagher* adversary proceeding, relied upon by Defendants, included no argument that the Defendants returned assets to an Earn Account *following termination of the Earn Account Agreement*. As noted in the Court's Opinion:

> Gallagher makes several arguments in support of the Motion, including that (1) she relied on misleading public statements from Alex Mashinsky and others prior to opening her account; (2) Mashinky's oral statements constituted oral modifications of the contract, since the Celsius Terms of Use did not include a clause preventing oral modifications of the contract; (3) Celsius promised to give fair notice of changes in the Terms of Use and did not do so; (4) because Celsius is not a bank and does not have a banking license, it does not have a claim to ownership of her assets.

Order Denying Rebecca Gallagher's Motion, at 1. (Internal citations omitted).

21. Nor does the Court's Opinion in the adversary proceeding brought by *Kulpreet Kahalnuja* address such a factual circumstance. In the Kahalnuja Adversary Proceeding, the Court addressed eight different theories as to why the Terms of Use did not apply or were unenforceable, including:

> including that (1) Earn Assets belong to Account Holders because he paid taxes on the interest earned on his deposited assets (Motion, at 2); (2) Earn Assets were "loaned" to the Debtors by Account Holders, which indicates that title and ownership did not transfer to Celsius; (3) the use of "loan" throughout Celsius's terms of use creates an ambiguity that should be construed against Celsius and in favor of Account Holders; (4) the terms of use provide Account Holders the right to withdraw their digital assets at any time and obligate Celsius to return these assets, which indicates that ownership remained with Account Holders; (5) updates and modifications to Celsius's terms of use were obfuscated and any clauses that materially impacted asset ownership were not expressly or conspicuously disclosed by the Debtors; (6) Celsius's former Chief Executive Officer, Alexander Mashinsky, and other executives publicly stated in videos and on Twitter that Account Holders retained full ownership of their assets; (7) Celsius's terms of use constituted an unconscionable

8

contract and is therefore unenforceable; and (8) Khanuja attempted to withdraw assets in April and May 2022 and was prevented from doing so, possibly intentionally, by Celsius's platform and employees.

Order denying Kulpreet Khanuja's Motion, pp 1-2 (Internal citations omitted). Neither of these decisions of the Court addresses the Defendants' obligation under the Terms of Use to "immediately" terminate the Earn Account Agreement "at any time", removal of assets from such Earn Accounts, concurrent termination of Rewards accrual on the assets at issue consistent with termination pursuant to the Terms of Use, and then, months later, re-introducing the assets into the Earn Account absent any contract between the parties.

22. So, too, with the Court's decision in the adversary proceeding brought by *Kwok Mei Po*. In *Po*, the account holder claimed to have "full title to and ownership of the funds in her blocked or suspended Earn Accounts. Ms. Po argued that Celsius improperly blocked or suspended her accounts[.]" *Order Denying Kwok Mei Po's Motion* at p. 1. The *Po* claims are patently different from those of the Plaintiffs in this Adversary Proceeding, where the assets were acknowledged to be "immediately" removed from Earn Accounts, but then – inexplicably – redeposited several months later after the Earn Account Agreements were terminated. Ms. Po argued that "Celsius *failed to return* the cryptocurrency in the accounts to her before Celsius froze all account withdrawals." *Id.* at 2. (emphasis added). The Court states in *dicta*, that it is unclear whether her account suspension is the functional equivalent of a termination. The Court's decision in the Po Adversary Proceeding specifically carved out, and does not address, the issue here.

23. Po is further distinguishable. Ms. Po had too many accounts, and, therefore, many of the numerous accounts were suspended, again relying upon - rather than falling outside — the Terms of Use. Here, the Plaintiffs allege that the Agreement already terminated. There is no allegation that the accounts, here, were similarly suspended or there was a violation of the Terms of Use.

9

Weinberg Zareh Malkin Price LLP

24. Neither this Court, nor the Plaintiffs, have had an opportunity to address the Defendants rogue, unilateral decision to use the Earn Account(s) after the Plaintiffs' "immediate" termination of the Earn Account Agreements by its own terms and removal of the assets therefrom. The Motion to Dismiss does not address this in any way.

C. <u>The Elements Are Properly Pled.</u>

25. The remaining points in the Defendants' Motion to Dismiss are based upon the applicability of the Terms of Use, and therefore also must fail as a result of the Complaint's averrments that the Terms of Use had "immediately" terminated and no longer applied here. For example, the Defendants argue unjust enrichment should be dismissed because "the General Terms of Use" govern here. Motion to Dismiss at 13 -14. Similarly, the Defendants argue conversion "similarly fails because the General Terms of Use govern the parties' dispute." This is not a case of breach of a contract, however. Rather, this is a case – as alleged in the Complaint – of misappropriation of the Plaintiffs' assets *after* the Agreement was terminated.

26. Similarly, the Defendants attempt to obfuscate the constructive trust claims in the Complaint, once again stating that the unjust enrichment element cannot be met when "an express agreement exists that govern the dispute." Motion to Dismiss at 15 (quoting cases). Whether the Earn or Borrow Agreement, the Complaint alleges that all agreements among the parties had terminated "immediately", and the Defendants acknowledged this both by representing that the transaction was "pending" and, critically, ceasing to pay Rewards on the assets and thus ***treating the assets as no longer in the Earn Accounts***.

27. Hence, for purposes of the Motion to Dismiss, ***there is no express agreement.***

28. While the Defendants rely upon "express" terms of alleged agreements to claim there was no fiduciary relationship, they do not address the allegation that a fiduciary relationship ensued *following* termination of the Parties' agreements.

10

Weinberg Zareh Malkin Price LLP

29. The Complaint alleges that following termination of the Account Agreement(s), the Defendants represented that the "immediate" transfers of the Plaintiffs' assets back to them were "pending." The assets no longer appeared in the Earn Accounts. They were not treated as if they were in Earn Accounts. The Defendants showed by word and action that the Earn Account Agreements, at least as to Plaintiffs, were terminated. Not only do the Plaintiffs provide specific dates, but they provide screen shots to support these allegations. It is disingenuous to argue that the Complaint is not sufficiently plead.

## CONCLUSION

**WHEREFORE**, the Plaintiffs respectfully request that this Court deny the Motion to Dismiss.

Dated: New York, New York
June 14, 2023

WEINBERG ZAREH MALKIN PRICE, LLP

BY: _____/s/ Adrienne Woods_____
Adrienne Woods, Esq.
Omid Zareh, Esq.
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
(212) 332-3209
awoods@wzmplaw.com
ozareh@wzmplaw.com

*Attorneys for Plaintiffs Georges Georgiou,
Philip Stewart, and Gilbert Castillo*