Hearing Date: June 28, 2023, at 10:00 a.m. (prevailing Eastern Time)

| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:    (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:    (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| GEORGES GEORGIOU, PHILIP HARRIS STEWART, and GILBERT CASTILLO, | ) ) ) | |
| Plaintiffs, | ) | Adversary Proceeding No. 23-01016 (MG) |
| v. | ) | |
| CELSIUS NETWORK LLC, *et al.*; | ) ) | |
| Defendants. | ) ) | |

**DEBTORS' REPLY IN SUPPORT OF DEBTORS' MOTION TO DISMISS
THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.      The Earn Order Requires Plaintiffs To Submit Their Claims Through the Claims Resolution Process. ...................................................................................... 2

    II.     Plaintiffs' Withdrawal Requests Did Not Terminate the Contractual Relationships Between the Parties. ....................................................................... 3

CONCLUSION ............................................................................................................................... 6

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Altowaiti v. Wolf*,
  2021 WL 2941753 (S.D.N.Y. July 12, 2021) ................................................................3

*Aramony v. United Way of Am.*,
  254 F.3d 403 (2d Cir. 2001) ........................................................................................2

*Arizona v. California*,
  460 U.S. 605 (1983) ....................................................................................................2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................4

*BYD Co. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021),
  *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022),
  *cert. denied*, 143 S. Ct. 103 (2022) ............................................................................4

*Glob. Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006) ........................................................................................5

*In re PCH Assocs.*,
  949 F.2d 585 (2d Cir. 1991) ........................................................................................2

*Rezzonico v. H&R Block, Inc.*,
  182 F.3d 144 (2d Cir. 1999) ........................................................................................2

# INTRODUCTION[1]

1. In the year since these chapter 11 cases were filed, the Debtors and their advisors have moved forward in an expeditious and efficient manner with the aim of maximizing recoveries for creditors. With the auction process complete and a disclosure statement forthcoming, a resolution is near.

2. Plaintiffs' adversary case is antithetical to the efficient and equitable process that the Debtors and the Court have sought to implement. The simple reality is that the Debtors do not have enough assets to pay every customer in full. While Plaintiffs strenuously attempt to differentiate themselves from other customers, they, like all other Earn Account Holders, hold a claim against the Debtors for the amounts in their Earn Accounts. That they unsuccessfully sought to withdraw funds from those accounts during the Pause does not change that basic fact.

3. Plaintiffs' opposition to the Debtors' Motion reflects a fundamental misunderstanding of the scope of the "law of the case" doctrine, the Debtors' arguments thereto, and Plaintiffs' own contractual relationship with the Debtors. Pursuant to the Earn Order, Plaintiffs, like all other Earn Account Holders, are required to submit their claims through the claims resolution process. And even if the Earn Order did not govern this dispute, Plaintiffs nonetheless fail to plead facts sufficient to support their various causes of action and therefore must have their causes of action dismissed for failure to state a claim.

4. For the reasons set forth in the Debtors' Motion and reinforced in this Reply, the Court should dismiss Plaintiffs' Complaint in full.

---

[1] Capitalized terms used but not defined in this Reply have the meanings given to such terms in the *Debtors' Motion to Dismiss to Dismiss the Complaint and Incorporated Memorandum of Law* [Adv. Pro. No. 23-01016, Dkt. No. 9] (the "Motion").

**ARGUMENT**

I. **The Earn Order Requires Plaintiffs To Submit Their Claims Through the Claims Resolution Process.**

5. Plaintiffs first argue in *Plaintiffs' Opposition to Defendants' Motion to Dismiss* [Adv. Pro. No. 23-01016, Dkt. No. 12] (the "Opposition") that the Earn Order is inapposite to their Complaint because "Plaintiffs' claims are substantially different from any issues addressed in prior 'law of the case.'" Opp'n, ¶ 19. Plaintiffs seek to differentiate their claims from those in the Khanuja, Po, and Gallagher motions, arguing that these factual distinctions make the Earn Order inapplicable. *Id.* at ¶¶ 20–24. Plaintiffs misconstrue the scope of the "law of the case" doctrine and its applicability in this case.

6. Plaintiffs employ a narrow conception of the "law of the case" doctrine that appears to conflate the parameters of that doctrine with the related, but distinct, doctrine of *res judicata*. As Plaintiffs' own cases acknowledge, "[u]nlike the more precise requirements of res judicata, law of the case is an amorphous concept." *Arizona v. California*, 460 U.S. 605, 618 (1983); *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 148–49 (2d Cir. 1999) (differentiating between "law of the case" and *res judicata*). Under the "law of the case" doctrine, "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). The doctrine can apply when a prior decision "either expressly resolved an issue or necessarily resolved it by implication." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001).

7. As set forth in Debtors Motion, the Earn Order established the law of the case for considering and adjudicating Earn Account claims. In the Earn Order, the Court noted several times that damages claims asserted by Account Holders were explicitly reserved for the claims resolution process. *See* Earn Order at 30, 43, 45. All of Plaintiffs' claims seek the return of assets

2

located in their respective Earn Accounts and damages suffered as a result, and thus fall within the ambit of the Earn Order. These claims thus must be brought through that claims process as ordered by this Court.

8. Plaintiffs attempt to argue that their factual circumstances are distinct from other Earn Account Holders' claims that were ultimately denied relief pursuant to the Earn Order. Their distinctions are unavailing and do not preclude applying the Earn Order here. Plaintiffs are Earn Account Holders who assert claims for declaratory judgment and damages related to assets in those Accounts. The Earn Order dictates that those claims, if viable at all, be asserted through the claims process, not through piecemeal adversary proceedings.

II. **Plaintiffs' Withdrawal Requests Did Not Terminate the Contractual Relationships Between the Parties.**

9. Even if the Earn Order did not preclude litigation of Plaintiffs' claims in this forum, those causes of action are nevertheless deficient as a matter of law.[2] In an effort to obviate the clear legal deficiencies of their claims, Plaintiffs spend much of their opposition asserting that their withdrawal requests terminated the Terms of Use with respect to each Plaintiff, relying heavily on their own conclusory statements to support this proposition. Specifically, Plaintiffs' response to the Debtors' arguments to dismiss the unjust enrichment, conversion, and constructive trust claims relies entirely on allegations that Plaintiffs' withdrawal requests terminated the Terms of Use—a legal conclusion that Plaintiffs argue must be accepted as true. To support this position, Plaintiffs state only that upon submission of their withdrawal requests to Celsius, transaction histories on

---

[2] Because Plaintiffs' opposition does not address the Debtors' arguments as to the dismissal of their fraud or "failure of contract" claims, *see* Motion, ¶¶ 22 n.2, 44–45, Plaintiffs should be deemed to have conceded or waived those arguments. *See, e.g.*, *Altowaiti v. Wolf*, 2021 WL 2941753, at *4 (S.D.N.Y. July 12, 2021) ("[N]umerous courts in this District have held that a plaintiff's failure to address an issue in an opposition to a Rule 12(b)(6) motion 'amounts to a concession or waiver of the argument.'" (quoting *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018))). The Debtors therefore do not address those claims here and rely on the arguments advanced in the Motion.

3

their respective Accounts showed a withdrawal of the requested assets as "pending" and that the Debtors stopped paying rewards on the assets marked for withdrawal. Opp'n, ¶¶ 6, 11, 26. From these facts, Plaintiffs conclusively state that their respective Terms of Use agreements with the Debtors terminated.[3]

10. While Plaintiffs are correct that at the motion to dismiss stage, factual allegations are entitled to a presumption of truth, their unsubstantiated legal conclusions regarding the ongoing operability of the Terms of Use are not. *See, e.g.*, *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 817 (S.D.N.Y. 2021) ("Although factual allegations are afforded a presumption of truth, a court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022), *cert denied*, 143 S. Ct. 103 (2022). And Plaintiffs' factual allegations, even accepted as true, simply do not support the conclusion that each Plaintiffs' withdrawal request terminated the operative Terms of Use relationship.

11. Contrary to Plaintiffs' assertions, Section 11 of the Terms of Use does not provide a unilateral termination right to customers. Rather, while acknowledging that customers have "a call option on all loans made to Celsius to demand immediate, complete or partial repayment of any loan at any time," that Section explicitly and unequivocally conditions that right to withdraw upon acceptance of the transmission request by Celsius. *See* General Terms of Use § 11 ("Every transmission request shall be deemed pending until accepted by us. We may refuse to accept such request, or delay the processing of an approved request for any reasonable reason…."). Moreover,

---

[3] As a preliminary matter, Plaintiffs do not address—nor can they explain—how the Terms of Use agreements "terminated" when Plaintiffs continued to have additional assets on the Celsius platform that were not subject to the withdrawal requests. *See* Compl. at 67–69, 95–96, 115 (showing assets remaining in each Plaintiff's Earn Account beyond the requested withdrawal amounts). On this alone, Plaintiffs' conclusions regarding the termination of the Terms of Use relationships can be dismissed.

4

Section 11 reserves Celsius' ability to "immediate[ly] halt" transactions due to, among other things, "extreme market conditions." *Id.* Plaintiffs ignore this language in their pleadings, but such language is integral to the evaluation of Plaintiffs' claims. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (holding that on a 12(b)(6) motion, a court may consider materials "integral" to a complaint, even if not included in the complaint, and noting that "[i]n most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint").

12. Read in the proper context, Plaintiffs' contention that the withdrawal requests effected a termination of the Terms of Use agreements can only be countenanced if Celsius did, in fact, accept those requests. In this case, Plaintiffs' own pleadings and exhibits demonstrate that this was not the case. Each Plaintiff acknowledges that even after the withdrawal requests were submitted, their respective Account transaction histories continued to mark the requests as "pending." *See* Compl. at 62–63, 88–89, 100, 111. The continued "pending" status of each of withdrawal request indicates that none of these requests were in fact accepted by Celsius. *See* General Terms of Use § 11 ("Every transmission request *shall be deemed pending until accepted by us*." (emphasis added)).

13. The fact that Celsius allegedly ceased paying rewards on the assets Plaintiffs requested withdrawn from their Earn Accounts does not contradict this determination. Section 11 explicitly states that customers "shall no longer accrue Rewards on the amount of loans *as of the time of [the customer's] exercise of the call option*." *Id.* (emphasis added). It is therefore in line

5

with the contractual language that Celsius stopped paying rewards to Plaintiffs at the time they requested their withdrawals, even if those withdrawal requests were not ultimately accepted.

14. Because the Complaint is devoid of plausible factual allegations indicating that Celsius accepted Plaintiffs' withdrawal requests, Plaintiffs' bare legal conclusion that the contractual agreements between Plaintiffs and the Debtors were terminated is wholly unsupported. As a result, the Terms of Use continue to be an operative agreement governing Plaintiffs' respective relationships with the Debtors. Plaintiffs' arguments in support of their claims for unjust enrichment, conversion, and constructive trust therefore fail.

## **CONCLUSION**

15. For the foregoing reasons, as well as the reasons stated in the Debtors' Motion, the Court should dismiss Plaintiffs' Complaint in its entirety as to all Debtors.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Washington, D.C.<br>Dated: June 21, 2023 | */s/ T.J. McCarrick*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Judson Brown, P.C. (admitted *pro hac vice*)<br>T.J. McCarrick (admitted *pro hac vice*)<br>Leah Hamlin (admitted *pro hac vice*)<br>1301 Pennsylvania Avenue NW<br>Washington, D.C. 20004<br>Telephone:    (202) 389-5000<br>Facsimile:    (202) 389-5200<br>Email:    judson.brown@kirkland.com<br>         tj.mccarrick@kirkland.com<br>         leah.hamlin@kirkland.com<br><br>- and -<br><br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:    joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:    patrick.nash@kirkland.com<br>         ross.kwasteniet@kirkland.com<br>         chris.koenig@kirkland.com<br>         dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

7